| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jennifer Witherell Crastz - SBN 185487<br><br>HEMAR, ROUSSO & HEALD, LLP<br><br>15910 Ventura Blvd., 12th Floor<br><br>Encino, CA  91436<br><br>email: jcrastz@hrhlaw.com<br><br>Tel. (818) 501-3800<br><br>Fax (818) 501-2985<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:  AMY LI HSIAO | CASE NO.:  8:24-bk-10284-SC |
|---|---|
| | CHAPTER:  7 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)**<br><br>**(REAL PROPERTY)** |
| Debtor(s). | DATE:   November 12, 2025<br>TIME:    10:00 a.m.   (appearance via Zoom)*<br>COURTROOM:  5C (Hon. Scott C. Clarkson) |

**Movant**:  CITY NATIONAL BANK

 **\*** ZoomGov accessibility information will be provided by the Court in its tentative ruling prior to the hearing.

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. [x] This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. [ ] This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____ ; and, you may appear at the hearing.

    a. [ ] An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. [ ] An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. [ ] An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 10/22/2025

HEMAR, ROUSSO & HEALD, LLP
Printed name of law firm (if applicable)

JENNIFER WITHERELL CRASTZ
Printed name of individual Movant or attorney for Movant

/s/ *Jennifer Witherell Crastz*
Signature of individual Movant or attorney for Movant
Attorneys for Movant,
CITY NATIONAL BANK

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                               Page 2                          F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   [X] Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   [ ] Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   [ ] Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   [ ] Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

      *Street address*: 22803 Seaway Drive
      *Unit/suite number*:
      *City, state, zip code*: Laguna Niguel, CA 92677

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__ ):

3. **Bankruptcy Case History:**

   a. A [X] voluntary [ ] involuntary   bankruptcy petition under chapter  [ ] 7 [X] 11 [ ] 12 [ ] 13
   was filed on (*date*) 2/5/2024 .

   b. [X] An order to convert this case to chapter [X] 7 [ ] 11 [ ] 12 [ ] 13  was entered on (*date*) __1/17/2025__.

   c. [ ] A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. [ ] Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) [ ] Movant's interest in the Property is not adequately protected.

         (A) [ ] Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) [ ] The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) [ ] Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) [ ] The bankruptcy case was filed in bad faith.

         (A) [ ] Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) [ ] The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) [ ] A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) [ ] Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) [ ] The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) [ ] Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay:

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit_____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion: (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a.   The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit_____

d. ☒ Other: **Application of Chapter 7 Trustee to Employ Real Estate Broker and Trustee's Notice of Intent to Abandon. Dkt. # 315 & 341 attached as Exhibit 3. Claims Register attached as Exhibit 4.**


7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                           Page 4                          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under: ☐ 11 U.S.C. § 362(d)(1) ☒ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 10/22/2025

HEMAR, ROUSSO & HEALD, LLP
Printed name of law firm (*if applicable*)
JENNIFER WITHERELL CRASTZ
Printed name of individual Movant or attorney for Movant

/s/ *Jennifer Witherell Crastz*
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 5                          **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _____**RYAN PARK**_____ , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*state title and capacity*):  Vice President & SSG Account Officer Sr.

    c.  ☐  Other (*specify*):

2.  a.  ☐  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached*):

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _1____.

    b.  ☐  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c.  ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other (*specify*):

4.  a.  The address of the Property is:

        *Street address*: 22803 Seaway Drive
        *Unit/suite no*.:
        *City, state, zip code*: Laguna Niguel, CA 92677

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        APN 658-301-18, Deed of Trust recorded on June 25, 2009 in Orange County Recorder's Office, Instrument No. 2009000336782

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

  a. [X] Debtor's principal residence        b. [ ] Other residence
  c. [ ] Multi-unit residential              d. [ ] Commercial
  e. [ ] Industrial                          f. [ ] Vacant land
  g. [ ] Other (*specify*):

6. Nature of the Debtor's interest in the Property:

  a. [X] Sole owner
  b. [ ] Co-owner(s) (*specify*):
  c. [ ] Lienholder (*specify*):
  d. [ ] Other (*specify*):
  e. [X] The Debtor [X] did [ ] did not  list the Property in the Debtor's schedules.
  f. [X] The Debtor acquired the interest in the Property by [X] grant deed [ ] quitclaim deed [ ] trust deed.
       The deed was recorded on (*date*) 6/25/2009 .

7. Movant holds a [X] deed of trust [ ] judgment lien [ ] other (*specify*) _____
   that encumbers the Property.

  a. [X] A true and correct copy of the document as recorded is attached as Exhibit  2   .
  b. [X] A true and correct copy of the promissory note or other document that evidences the Movant's claim is
       attached as Exhibit  1   .
  c. [ ] A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
       trust to Movant is attached as Exhibit _____ .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $   1,439,223.01 | $ same | $  1,439,223.01 |
| b. | Accrued interest: | $   108,573.54 | $  165,437.92 | $   274,011.46 |
| c. | Late charges | $   7,389.07 | $  12,257.75 | $  19,646.82 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $   4,568.81 | $  16,295.55 | $   20,864.36 |
| e. | Advances (property taxes, insurance): | $  13,529.00 | $  25,294.00 | $  38,823.00 |
| f. | Less suspense account or partial balance paid: | $[            ] | $[            ] | $[            ] |
| g. | TOTAL CLAIM as of (*date*):  10/16/2025 | $  1,573,283.43 | $ 222,297.65 | $  1,792,568.65 |
| h. | [ ] Loan is all due and payable because it matured on (*date*) _____ | | | |

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

  a. Notice of default recorded on (*date*) 8/2/2023 ____ or [ ] none recorded.
  b. Notice of sale recorded on (*date*) 3/20/2024 ___ or [ ] none recorded.
  c. Foreclosure sale originally scheduled for (*date*) 5/1/2024 ____ or [ ] none scheduled.
  d. Foreclosure sale currently scheduled for (*date*) _____ or [X] none scheduled.
  e. Foreclosure sale already held on (*date*) _____ or [X] none held.
  f. Trustee's deed upon sale already recorded on (*date*) _____ or [X] none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 7                          **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. [X] (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ __12,000.79__ for the month of __Oct. 1__ 2025.

    b. Number of payments that have come due and were not made: __32__. Total amount: $ __389,204.86__

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ __12,000.79__ will come due on (*date*) __11/1/2025__, and on the __1st__ day of each month thereafter. If the payment is not received within __15__ days of said due date, a late charge of $ __600.04__ will be charged to the loan.

    d. The fair market value of the Property is $ __7,099,000.00__, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) [X] Other (*specify*): **Application of Chapter 7 Trustee to Employ Real Estate Broker. Movant notes that Trustee was not able to sell the Property for this amount and ultimately abandoned the Property because their was no equity for the estate.  See Dkt. # 315 & 341 attached as Exhibit 3.**

    e. **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report [X] the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | City National Bank | $ 1,603,147.97 | $ 1,792,568.65 |
| 2nd deed of trust: | Wells Fargo Bank | $ 392,477.00 | $ 392,477.00 |
| 3rd deed of trust: | West Coast Private Investments, LLC | $ 1,470,657.67 | $ 1,470,657.67 |
| 4th deed of trust: | Danco | $ 1,397,945.00 | $ 1,397,945.00 |
| Lienholder: | Rutan & Tucker | $ 86,911.21 | $ 86,911.21 |
| Other: | Monarch Point HOA | $ 7,860.00 | $ 7,860.00 |
| **TOTAL DEBT: $** | | $4,958,998.85 | $5,148,419.53 |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit __4__ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) [X] Other (*specify*): Claims Register

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____ % of the fair market value of the Property.

    h. [X] **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ __1,950,580 (before costs of sale)__

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                      Page 8                          **F 4001-1.RFS.RP.MOTION**

i. [X]   Estimated costs of sale: $ ___709,000.00___ (estimate based upon ___10__ % of estimated gross sales price) **resulting in equity of only 17.48%**

j. [X]   The fair market value of the Property is declining because:
**The Trustee has filed a Notice of Intent to Abandon the Subject Property (Dkt. #341) for the following reason: The Trustee's broker diligently marketed the Property for sale pursuant to the terms set forth in this Court's Order. Notwithstanding, no offer was received that would result in any equity above the costs of sale and secured debts against the Property. As a result, the Property has no value and benefit to the estate.**

12. [ ]   (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.   A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date:_____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date (*if applicable*): _____.

b.   Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.   Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.   Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____* )

e.   Attorneys' fees and costs:                                            $
(*For details of type and amount, see Exhibit _____* )

f.   Less suspense account or partial paid balance:              $[                    ]

TOTAL POSTPETITION DELINQUENCY:              $

g.   Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $ _____ will be charged to the loan.

h.   Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$ _____ received on (*date*) _____
$ _____ received on (*date*) _____
$ _____ received on (*date*) _____

i. [ ]   The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____ . See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____ .

16. ☐  Movant regained possession of the Property on (*date*) _____ , which is ☐ prepetition ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

   a. ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐  The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐  Other (*specify*):

18. ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐  Multiple bankruptcy cases affecting the Property include:

     1.  Case name: _____
       Chapter: _____  Case number: _____
       Date dismissed: _____  Date discharged: _____  Date filed: _____
       Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

     2.  Case name: _____
       Chapter: _____  Case number: _____
       Date dismissed: _____  Date discharged: _____  Date filed: _____
       Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

     3.  Case name: _____
       Chapter: _____  Case number: _____
       Date dismissed: _____  Date discharged: _____  Date filed: _____
       Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

   ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 10                                    **F 4001-1.RFS.RP.MOTION**

19. ☐   Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐   These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐   Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit_____.

    c. ☐   For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/16/25 | RYAN PARK | _(signature)_ |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                   Page 11                          **F 4001-1.RFS.RP.MOTION**

# EXHIBIT 1

Account No.
Loan No.

## Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE
### (One-Year Treasury Index — Rate Caps — 5 Yr. Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JUNE 18, 2009                    LOS ANGELES                ,        CALIFORNIA
[Date]                              [City]                                [State]

22803 SEAWAY DRIVE, LAGUNA NIGUEL CA 92677
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,900,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **CITY NATIONAL BANK**, a national banking association. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.2500%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

CERTIFIED TO BE A TRUE &
CORRECT COPY OF THE ORIGINAL

## 3.    PAYMENTS

BY ................................................
CITY NATIONAL BANK

### (A)    Time and Place of Payments

I will make a payment on the first day of every month, beginning on **AUGUST 1, 2009**.

During the period before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my monthly payment will consist only of the interest due on the unpaid Principal, as described in Section 3(B) of this Note. This period is called the "Interest Only Period."

The period after the Interest Only Period is called the "Amortization Period." During the Amortization Period, I will make monthly payments of Principal and interest. My first monthly payment of Principal and interest will be due beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date, and if the payment includes both Principal and interest, it will be applied to interest before Principal. Any Prepayment, as described in Section 5 of this Note, will be applied as of the date of actual receipt by the Note Holder. If, on **JULY 1, 2039**, I still owe amounts under this

CNB IO-ARM NOTE
(Rev. 07/2006)
NOT0001

**CITY NATIONAL BANK**

Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 60938, Los Angeles, CA 90060** or at a different place if required by the Note Holder.

**(B)      Amount of My Monthly Payments During the Interest Only Period**

During the Interest Only Period, my first monthly payment will be in the amount of U.S. **$8,312.50**. Thereafter, my monthly payment will be equal to the amount sufficient to pay the accrued interest, at the interest rate described in Section 2 of this Note, on the unpaid Principal I am expected to owe on the first day of the calendar month prior to each payment due date. Notwithstanding the previous sentence if, at the time the Note Holder prepares its billing statement for a monthly payment, the unpaid Principal has been further reduced, my monthly payment will be equal to the accrued interest, at the interest rate described in Section 2 of this Note, on the reduced unpaid Principal.

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES DURING THE AMORTIZATION PERIOD**

**(A)      Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **JULY 2014**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B)      The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)". The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)      Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE QUARTER** percentage points **(2.2500%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

After calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date, together with interest at the new interest rate, in full in substantially equal installments through the Maturity Date. The result of this calculation will be the new amount of my monthly payment. My first monthly payment that consists of both Principal and interest will be due on the First Principal and Interest Payment Due Date as described in Section 4(G) of this Note.

**(D)      Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.2500%** or less than **3.5000%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.00%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.2500%** or less than **3.5000%**.

**CITY NATIONAL BANK**

Account No.
Loan No.

### (E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)    Notice of Changes

Before the effective date of any change in my interest rate and monthly payment during the Amortization Period, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G)    Date of First Principal and Interest Payment

The date of my first payment consisting of both Principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 5th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will decrease for the remainder of the Interest Only Period in accordance with Section 3(B) of this Note. If the partial Prepayment is made during the Amortization Period, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000% of my overdue payment of interest, during the Interest Only Period, and of my overdue payment of Principal and interest, during the Amortization Period. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

CNB IO-ARM NOTE
(Rev. 07/2008)
NOT0001



Account No.
Loan No.

**(C)      Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)      No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)      Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.      GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.      WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.      UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**(A)      Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument shall read as follows:**

CNB IO-ARM NOTE
(Rev. 07/2006)
NOT0001

**CITY NATIONAL BANK**

Account No.
Loan No.


## Transfer of the Property or a Beneficial Interest.

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest is sold or transferred) without immediate payment in full of all sums secured by this Security Instrument, Lender may call all such sums immediately due and payable.

If Lender exercises this right, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)    When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead read as follows:

## Transfer of the Property or a Beneficial Interest.

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest is sold or transferred) without immediate payment in full of all sums secured by the Security Instrument, Lender may call all such sums immediately due and payable.

If Lender exercises this right, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of such period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

After the first Change Date (as defined in the Note), the Lender shall not exercise this right if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**CITY NATIONAL BANK**

Account No.
Loan No.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____(Seal)          _____(Seal)
Amy L. Hsiao                         -Borrower     Kim Y. Kao                          -Borrower

*[Sign Original Only]*

Account No. X
Loan No.

### AUTODEBIT RIDER
### TO
### Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE
### & Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER
### 10yr, 7yr, 5yr, 3yr Interest Only Period

This Autodebit Rider ("Rider") is made this **18TH** day of **JUNE, 2009**, by and between **CITY NATIONAL BANK**, a national banking association ("Lender"), and the undersigned ("Borrower", "me", "my" or "I") and is incorporated into and shall be deemed to amend and supplement (a) the **Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE** of even date herewith executed by Borrower in favor of Lender ("Note"), which Note is secured by that certain Mortgage, Deed of Trust, or Security Agreement ("Security Instrument") of even date herewith, and (b) the **Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER** to the Security Instrument of even date herewith.

**1.     Definitions.** Capitalized terms not otherwise defined herein shall have the meanings given them in the Note.

**2.     Termination of Autodebit Authorization.** At the time of the signing of this Rider, Borrower has authorized Lender to have Borrower's mortgage loan payment automatically deducted from Borrower's designated CNB deposit (checking, savings or money market) account on the first day of each month. In this Rider the "Effective Date" shall be the first day of the calendar month immediately following the day when Borrower's autodebit authorization terminates, whether voluntarily or involuntarily, and for whatever reason.

**3.     Amendments to Note Regarding Interest Rate and Monthly Payment Decrease.** Sections 2 and 3(B) of the Note are amended and restated in their entirety to state as follows:

**2.     INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.1250%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.     (B)     Amount of My Monthly Payments During the Interest Only Period**

During the Interest Only Period, my first monthly payment will be in the amount of U.S. **$8,114.58**. Thereafter, my monthly payment will be equal to the amount sufficient to pay the accrued interest, at the interest rate described in Section 2 of this Note, on the unpaid Principal I am expected to owe on the first day of the calendar month prior to each payment due date. Notwithstanding the previous sentence if, at the time the Note Holder prepares its billing statement for a monthly payment, the unpaid Principal has been further reduced, my monthly payment will be equal to the accrued interest, at the interest rate described in Section 2 of this Note, on the reduced unpaid Principal.

**4.     Amendment to Interest Only/Fully Amortizing Adjustable Rate Rider Regarding Initial Interest Rate.** The first sentence of Section A. of the Interest Only/Fully Amortizing Adjustable Rate Rider is changed to state as follows: "The Note provides for an initial fixed interest rate of **5.1250%**.

**5.     Effect of Termination of Autodebit Authorization.** In the event that Autodebit Authorization terminates, whether voluntarily or involuntarily, and for whatever reason, then:

(a)     Interest on the unpaid principal balance shall accrue at, and shall be adjusted to, the rate or rates provided for under the Note, as if the changes made by Section 3 of this Rider had never been effected; and

AUTODEBIT IO-ARM HYBRID RDR
(04/2009)
RID0089

**CITY NATIONAL BANK**

Account No. X

Loan No.

(b)    The monthly payments shall be in the amounts, and shall be adjusted, as provided for under the Note, as if the changes made by Section 3 of this Rider had never been effected.

6.    **Miscellaneous.**    Except as modified by this Rider and any other riders to the Note or the Interest Only/Fully Amortizing Adjustable Rate Rider of even date herewith required by Lender to be executed by Borrower, the provisions of the Note and the Interest Only/Fully Amortizing Adjustable Rate Rider shall remain unchanged and in full force and effect. This Rider may not be modified except by a writing signed by both Lender and Borrower.  Borrower may not assign Borrower's rights or obligations under this Rider.

IN WITNESS WHEREOF, Borrower has executed this Rider as of the day and year first above written.

_____    _____
Amy L. Hsiao                        -Borrower        Kim Y. Kao                        -Borrower

*[Sign Original Only]*

AUTODEBIT IO-ARM HYBRID RDR
(04/2009)
RID0089

**City National Bank**

# EXHIBIT 2

Case 8:24-bk-10284-SC   Doc 365   Filed 10/02/25   Entered 10/02/25 15:14:86   Desc
This Document was electronically recorded by
Main Document   Page 22 of 83   Stewart Title

STEWART TITLE OF CALIFORNIA
MAJOR ACCOUNTS DIVISION

After Recording Return To:

City National Bank
555 South Flower Street, 23rd Floor
Los Angeles, CA 90071
Attn: Funding Department

Account No. ▮▮▮▮▮
Loan No.
APN No.   658-301-18

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

‖‖‖‖‖‖‖‖‖‖‖‖‖ 78.00
**2009000336782 04:05pm 06/25/09**
104 28 D11 24
0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

**RESIDENTIAL LENDING**

AUG 07 2009

**RECEIVED**
**CITY NATIONAL BANK**

2/2 325

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 18, 2009**, together with all Riders to this document.

**(B) "Borrower"** is **KIM Y. KAO AND AMY L. HSIAO, HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP** . Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **CITY NATIONAL BANK**, a national banking association. Lender is a corporation or association organized and existing under the laws of the United States of America. Lender's address is 555 South Flower Street, 23rd Floor, Los Angeles, CA 90071. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **STEWART TITLE, A CALIFORNIA CORPORATION**.

**(E) "Note"** means the promissory note signed by Borrower and dated **JUNE 18, 2009**. The Note states that Borrower owes Lender **ONE MILLION NINE HUNDRED THOUSAND DOLLARS AND 00/100** (U.S. $ 1,900,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 1, 2039.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)                                                              **CITY NATIONAL BANK**
SICA001

Account No. X
Loan No.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider            [ ] Condominium Rider                [ ] Second Home Rider

[ ] Balloon Rider                    [X] Planned Unit Development Rider   [ ] 1-4 Family Rider

[ ] Biweekly Payment Rider                                               [X] Autodebit Rider

[ ] Other(s) [specify]:

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

**CALIFORNIA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 2 of 15

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **ORANGE**, of the State of California:

**LOT 41 OF TRACT NO. 12041, IN THE CITY OF LAGUNA NIGUEL, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 533, PAGE(S) 33 TO 41, INCLUSIVE, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY**

which currently has the address of _____ **22803 SEAWAY DRIVE** _____
[Street]

_____ **LAGUNA NIGUEL** _____ , California _____ **92677** _____ ("Property Address"):
[City]                                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)                                                        **CITY NATIONAL BANK**
SICA001

current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 4 of 15



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 6 of 15

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 8 of 15

(Page 79 of 243)    Case 8:24-bk-10284-SC    Doc 365    Filed 10/22/25    Entered 10/22/25 15:14:36    Desc
Main Document    Page 30 of 83

Account No. X
Loan No.

had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation,

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)                                                                                    **CITY NATIONAL BANK**
SICA001

Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 10 of 15

Account No. X
Loan No.

Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of

servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will
remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

**CITY NATIONAL BANK**

shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 13 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above.

_____ 6/20/09 (Seal)
Amy L. Hsiao                          -Borrower

_____ 6/20/09 (Seal)
Kim Y. Kao                            -Borrower

**CALIFORNIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3005  1/01

CNB SI—CALIFORNIA
(Rev. 02/2009)
SICA001

**CITY NATIONAL BANK**

Page 14 of 15

Account No. X
Loan No.

_____[Space Below This Line For Acknowledgment]_____

State of California          )

County of _Orange_          )

On _June 20, 2009_ before me, _A. G. JACOBS, NOTARY PUBLIC_,
                                       (insert name and title of the officer)

personally appeared _AMY L. HSIAO, KIM Y. KAO_
_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____                    (Seal)

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005  1/01

CNB SI—CALIFORNIA                                                **CITY NATIONAL BANK**
(Rev. 02/2009)
SICA001
                              Page 15 of 15

Account No. X
Loan No.

### Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER
### (First 5 YRS Fixed: One-Year Treasury Index - Rate Caps)

This Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER is made this **18TH DAY OF JUNE, 2009**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's **Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE** (the "Note") to **CITY NATIONAL BANK**, a national banking association, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 22803 SEAWAY DRIVE, LAGUNA NIGUEL CA 92677
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **5.2500%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES DURING THE AMORTIZATION PERIOD**

**(A)    Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **JULY 2014**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B)    The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)". The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**CITY NATIONAL BANK**

CNB IO-ARM RDR
(Rev. 07/2006)
RDR0022

Page 1 of 4

Account No. X███
Loan No. ███

**(C)     Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE QUARTER** percentage points (**2.2500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

After calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date, together with interest at the new interest rate, in full in substantially equal installments through the Maturity Date. The result of this calculation will be the new amount of my monthly payment. My first monthly payment that consists of both Principal and interest will be due on the First Principal and Interest Payment Due Date as described in Section 4(G) of this Note.

**(D)     Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.2500%** or less than **3.5000%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.00%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.2500%** ("Maximum Interest Rate") or less than **3.5000%**.

**(E)     Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)     Notice of Changes**

Before the effective date of any change in my interest rate and monthly payment during the Amortization Period, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)     Date of First Principal and Interest Payment**

The date of my first payment consisting of both Principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the **5TH** anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

     (A)     Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

          **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial

**CITY NATIONAL BANK**

Account No.
Loan No

interest in the Property, including, but not limited to, those beneficial
interests transferred in a bond for deed, contract for deed, installment sales
contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent,
Lender may require immediate payment in full of all sums secured by this
Security Instrument. However, this option shall not be exercised by Lender
if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from
the date the notice is given in accordance with Section 15 within which
Borrower must pay all sums secured by this Security Instrument. If
Borrower fails to pay these sums prior to the expiration of this period,
Lender may invoke any remedies permitted by this Security Instrument
without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the
terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument
described in Section 11(A) above shall then cease to be in effect, and Uniform
Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used
in this Section 18, "Interest in the Property" means any legal or beneficial
interest in the Property, including, but not limited to, those beneficial
interests transferred in a bond for deed, contract for deed, installment sales
contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent,
Lender may require immediate payment in full of all sums secured by this
Security Instrument. However, this option shall not be exercised by Lender
if such exercise is prohibited by Applicable Law. Lender also shall not
exercise this option if: (a) Borrower causes to be submitted to Lender
information required by Lender to evaluate the intended transferee as if a
new loan were being made to the transferee; and (b) Lender reasonably
determines that Lender's security will not be impaired by the loan
assumption and that the risk of a breach of any covenant or agreement in this
Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable
fee as a condition to Lender's consent to the loan assumption. Lender also



**CITY NATIONAL BANK**

Account No. X
Loan No.

may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)        _____(Seal)
Amy L. Hsiao                  -Borrower         Kim Y. Kao                   -Borrower

*[Sign Original Only]*

**CITY NATIONAL BANK**

CNB IO-ARM RDR
(Rev. 07/2006)
RDR0022

Page 4 of 4

Account No. X
Loan No.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **18TH** day of **JUNE, 2009,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **CITY NATIONAL BANK,** a national banking association (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**22803 SEAWAY DRIVE, LAGUNA NIGUEL CA 92677**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
**MONARCH POINT HOMEOWNERS ASSOCIATION**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

**MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       Form 3150   1/01

CNB PUD RDR
(Rev. 07/2006)
RDR0017                                 Page 1 of 3                    **CITY NATIONAL BANK**

Account No.  X
Loan No.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender.  Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C.    **Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.    **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E.    **Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:
   (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;
   (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;
   (iii) termination of professional management and assumption of self-management of the Owners Association; or
   (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.    **Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3150  1/01**

CNB PUD RDR
(Rev. 07/2006)                                                          **CITY NATIONAL BANK**
RDR0017                                         Page 2 of 3

Account No. X ▮

Loan No. ▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ 6/20/09 (Seal)
Amy L. Hsiao       -Borrower

_____ 6/24/09 (Seal)
Kim Y. Kao       -Borrower

*[Sign Original Only]*

**MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3150   1/01

CNB PUD RDR
(Rev. 07/2006)
RDR0017            Page 3 of 3           **CITY NATIONAL BANK**

# AUTODEBIT RIDER
## TO
## Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE
## & Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER
### 10yr, 7yr, 5yr, 3yr Interest Only Period

This Autodebit Rider ("Rider") is made this **18TH** day of **JUNE, 2009**, by and between **CITY NATIONAL BANK**, a national banking association ("Lender"), and the undersigned ("Borrower", "me", "my" or "I") and is incorporated into and shall be deemed to amend and supplement (a) the **Interest Only/Fully Amortizing ADJUSTABLE RATE NOTE** of even date herewith executed by Borrower in favor of Lender ("Note"), which Note is secured by that certain Mortgage, Deed of Trust, or Security Agreement ("Security Instrument") of even date herewith, and (b) the **Interest Only/Fully Amortizing ADJUSTABLE RATE RIDER** to the Security Instrument of even date herewith.

1.    **Definitions.** Capitalized terms not otherwise defined herein shall have the meanings given them in the Note.

2.    **Termination of Autodebit Authorization.** At the time of the signing of this Rider, Borrower has authorized Lender to have Borrower's mortgage loan payment automatically deducted from Borrower's designated CNB deposit (checking, savings or money market) account on the first day of each month. In this Rider the "Effective Date" shall be the first day of the calendar month immediately following the day when Borrower's autodebit authorization terminates, whether voluntarily or involuntarily, and for whatever reason.

3.    **Amendments to Note Regarding Interest Rate and Monthly Payment Decrease.** Sections 2 and 3(B) of the Note are amended and restated in their entirety to state as follows:

2.    **INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.1250%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    **(B)    Amount of My Monthly Payments During the Interest Only Period**

During the Interest Only Period, my first monthly payment will be in the amount of U.S. **$8,114.58**. Thereafter, my monthly payment will be equal to the amount sufficient to pay the accrued interest, at the interest rate described in Section 2 of this Note, on the unpaid Principal I am expected to owe on the first day of the calendar month prior to each payment due date. Notwithstanding the previous sentence if, at the time the Note Holder prepares its billing statement for a monthly payment, the unpaid Principal has been further reduced, my monthly payment will be equal to the accrued interest, at the interest rate described in Section 2 of this Note, on the reduced unpaid Principal.

4.    **Amendment to Interest Only/Fully Amortizing Adjustable Rate Rider Regarding Initial Interest Rate.** The first sentence of Section A. of the Interest Only/Fully Amortizing Adjustable Rate Rider is changed to state as follows: "The Note provides for an initial fixed interest rate of **5.1250%**.

5.    **Effect of Termination of Autodebit Authorization.** In the event that Autodebit Authorization terminates, whether voluntarily or involuntarily, and for whatever reason, then:

(a)    Interest on the unpaid principal balance shall accrue at, and shall be adjusted to, the rate or rates provided for under the Note, as if the changes made by Section 3 of this Rider had never been effected; and

AUTODEBIT IO-ARM HYBRID RDR
(04/2009)
RID0089

**CITY NATIONAL BANK**

Account No. X
Loan No.

(b)   The monthly payments shall be in the amounts, and shall be adjusted, as provided for under the Note, as if the changes made by Section 3 of this Rider had never been effected.

6.   **Miscellaneous.**   Except as modified by this Rider and any other riders to the Note or the Interest Only/Fully Amortizing Adjustable Rate Rider of even date herewith required by Lender to be executed by Borrower, the provisions of the Note and the Interest Only/Fully Amortizing Adjustable Rate Rider shall remain unchanged and in full force and effect. This Rider may not be modified except by a writing signed by both Lender and Borrower.  Borrower may not assign Borrower's rights or obligations under this Rider.

IN WITNESS WHEREOF, Borrower has executed this Rider as of the day and year first above written.


_____          _____
Amy L. Hsiao                        -Borrower          Kim Y. Kao                        -Borrower


                                                    *[Sign Original Only]*

# EXHIBIT 3

1  TIMOTHY J. YOO (State Bar No. 155531)
   tjy@lnbyg.com
2  CARMELA T. PAGAY (State Bar No. 195603)
   ctp@lnbyg.com
3  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
4  Los Angeles, CA 90034
   Telephone: (310) 229-1234
5  Facsimile: (310) 229-1244

6  Attorneys for Thomas H. Casey
   Chapter 7 Trustee

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **SANTA ANA DIVISION**

11

12 In re                                    Case No. 8:24-bk-10284-SC

13 AMY LI HSIAO,                            Chapter 7

14                  Debtor.                 **APPLICATION OF CHAPTER 7
                                            TRUSTEE TO EMPLOY BERKSHIRE
15                                          HATHAWAY HOME SERVICES CA
                                            PROPERTIES AS REAL ESTATE
16                                          BROKER AND TO ENTER INTO
                                            EXCLUSIVE LISTING AGREEMENT;
17                                          DECLARATION OF CLARENCE
                                            YOSHIKANE IN SUPPORT THEREOF**

18                                          [No Hearing Required]

19

20 **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

21 **JUDGE**:

22         Thomas H. Casey, the chapter 7 trustee (the "Trustee," or "Applicant") for the estate of

23 Amy Li Hsiao (the "Debtor"), respectfully applies for authority to employ Berkshire Hathaway

24 Home Services CA Properties ("Broker") as the Trustee's real estate broker pursuant to an

25 Exclusive Authorization & Right to Sell Agreement for 90 days, commencing on May 15, 2025.

26 In support, the Trustee represents as follows:

27

28

                                            1

1. This case was commenced on February 5, 2024, when the Debtor filed a Voluntary Petition under chapter 11 of the Bankruptcy Code.  The case converted to chapter 7 on January 7, 2025, and the Trustee was appointed.

2. The main asset of this estate is the real property located at 22803 Seaview Drive, Laguna Niguel, California (the "Property").

3. The Trustee now intends to sell the Property.  Based on the proposed listing price for the Property of $7,099,000.00 and the recent stipulation with the Debtor in which the Debtor and the Trustee would divide the homestead exemption, the Trustee believes that the Property has significant equity for the estate.

4. The Trustee requires the services of a licensed real estate broker to market and sell the Property effectively, provide assistance concerning the structure of any potential sales of the Property, and assist the Trustee in negotiation and documentation of various transactions regarding the sale of the Property.

5. Selling the Property for the benefit of the creditors is essential to the effective administration of the estate.  The Trustee believes that employing Broker to market the Property will best accomplish this goal.

6. The Trustee proposes to hire Broker, through its agent, Clarence Yoshikane, as his real estate broker, for a period of 90 days, commencing on May 15, 2025.

7. The Trustee has agreed to pay a four percent (4%) commission in connection with the listing and sale of the Property.  However, Broker will accept such compensation as the Court deems reasonable.

8. The Trustee requires a professional real estate broker's assistance to accomplish the following tasks:

 a. To order, analyze, and prepare all documentation necessary to list and advertise the Property for sale.

 b. To list the Property with the most propitious listing services available; to show the Property as necessary and respond to potential purchasers' inquiries; and to solicit reasonable offers of purchasers.

2

c.      To convey all reasonable purchase offers to the Trustee and the Trustee's

counsel, and subject to the Trustee's approval, to negotiate, and confirm the acceptance

of the best offer.

d.      To cause to be prepared and submitted to escrow on behalf of the Trustee

any and all documents necessary to consummate a sale of the Property.

9.      Attached hereto as <u>Exhibit 1</u> and incorporated herein by reference is a copy of the

proposed listing agreement for the sale of the Property.

10.     The Trustee is informed and believes, and based thereon alleges, that Broker and

its agent, Clarence Yoshikane, have no connection with the Trustee, the Debtor, her creditors,

the Office of the United States Trustee ("OUST") or any employees of the OUST, bankruptcy

judges, or any other party in interest, and hence, that they neither represent nor hold an interest

adverse to the estate and are "disinterested persons" as that term is used in the Bankruptcy Code.

Based upon Clarence Yoshikane's declaration, it appears that Broker holds no pre-petition

claims against the estate.

11.     Clarence Yoshikane has a license to sell real property in the State of California

and is experienced in dealing with real properties, such as the Property, in the area in which the

Property is located.

12.     The Trustee has given notice of this Application, pursuant to Local Bankruptcy

Rule 2014-1(b)(2).

WHEREFORE, the Trustee prays for an entry of order authorizing him to employ

Broker as his real estate broker, at the expense of the estate, and to authorize him to execute an

Exclusive Authorization & Right to Sell Agreement with Broker, on the terms and conditions

set forth in <u>Exhibit 1</u> attached hereto, and for all other further and proper relief as the Court

deems appropriate.

DATED: May 19, 2025

THOMAS H. CASEY
Chapter 7 Trustee

Presented by:

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.

By: */s/ Carmela T. Pagay* _____
         CARMELA T. PAGAY
         Attorneys for Thomas H. Casey
         Chapter 7 Trustee

4

## <u>**DECLARATION OF CLARENCE YOSHIKANE**</u>

I, Clarence Yoshikane, do hereby declare:

1.      This Declaration is made in support of the foregoing Application to Employ Berkshire Hathaway Home Services CA Properties as Real Estate Broker and to Enter into Exclusive Listing Agreement, filed by Thomas H. Casey, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Amy Li Hsiao (the "Debtor").  The following statements are true of my own personal knowledge, except as to those matters which are herein stated upon my information and belief, and as to those matters, I believe them to be true.

2.      I am a California -licensed real estate broker with Berkshire Hathaway Home Services CA Properties ("Broker"), which the Trustee seeks to employ by the attached Application.  A true and correct copy of the Exclusive Authorization & Right to Sell Agreement is attached hereto as <u>Exhibit 1</u>.

3.      Broker is a well-established real estate brokerage firm with experience marketing and selling real properties in the area where the Property is located.

4.      The other brokers, agents, and support staff who will handle this matter, including myself, are experienced in marketing and selling real properties of similar kind and condition as that of the Property and are thus well-qualified to assist in the promotion and sale of the Property.  As indicated in the Resume attached to this Declaration as <u>Exhibit 2</u> and incorporated herein by this reference, I have specialized in the listing, promotion, negotiation, and sale of properties similar to the Property.

5.      To the best of my knowledge, Broker is not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the Office of the United States Trustee ("OUST") or employees of the OUST, bankruptcy judges, or with the Debtor's estate.

6.      I am informed and believe that Broker and its agents, associates, and employees are disinterested persons as the term is defined in 11 U.S.C. § 101(14), and I:

    a.      am not a creditor, an equity security holder, or an insider of the Debtor;

5

b.      am not and was not, within 2 years before the date of filing the petition, a director, officer, employee of the Debtor;

c.      do not have an interest materially adverse to the interests of the estate of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; and

d.      am not a relative or employee of the OUST or a bankruptcy judge.

7.      Broker is not a pre-petition creditor of the Debtor's estate.

8.      Broker has been advised of and has agreed to accept the proposed employment subject to the provisions of 11 U.S.C. § 328(a).  Broker understands that the Bankruptcy Court may allow compensation different from the compensation set forth herein if the Court subsequently determines that such agreed upon terms are improvident in light of developments that could not have been anticipated at the time the Application was approved.

9.      I understand and agree that no compensation or reimbursement will be paid except upon application to or approval by the Bankruptcy Court after notice to all creditors of the Debtor's estate or upon such notice as the Bankruptcy Court may hereafter order.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this 19th day of May 2025, at Newport Beach, California.

_____
CLARENCE YOSHIKANE

6

# EXHIBIT "1"



# DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.** Case No. 8:24-bk-10284-SC    APN: 658-301-18

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant  _Thomas H. Casey Trustee_  Date 5/15/25
Thomas H. Casey, Ch 7 Trustee for the Estate of: Amy Li Hsiao

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant  _____  Date _____

Agent  **Berkshire Hathaway HomeServices CA Properties**  DRE Lic. # 01317331
Real Estate Broker (Firm)

By _____  **Clarence Yoshikane**  DRE Lic. # 00801398  Date May 15, 2025
(Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.24 APPEARS ON THE FRONT)

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

| | | |
|---|---|---|
| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses not to be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020




**AD REVISED 12/21 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers.  Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | Thomas H. Casey, Ch 7 Trustee for the Estate of: Amy Li Hsiao | Date | 5/15/25 |
| Seller | _Thomas H Casey Trustee_ | Date | 5/15/25 |
| Buyer | | Date | |
| Buyer | | Date | |
| Buyer's Brokerage Firm | | DRE Lic # | Date |
| By | | DRE Lic # | Date |
| Seller's Brokerage Firm | Berkshire Hathaway HomeServices CA Properties | DRE Lic # 01317331 | Date |
| By | Clarence Yoshikane | DRE Lic # 00801398 | Date 5 15 2025 |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
**(Exclusive Authorization and Right to Sell)**
(C.A.R. Form RLA, Revised 6/21)

BERKSHIRE
HATHAWAY
HomeServices
California Properties

Date Prepared:  __May 15, 2025__

1. **EXCLUSIVE RIGHT TO SELL:** __Thomas H. Casey, Ch 7 Trustee__ ("Seller")
hereby employs and grants __Berkshire Hathaway HomeServices CA Properties__ ("Broker")
beginning (date) __May 15, 2025__ and ending at 11:59 P.M. on (date) __August 15, 2025__ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as __22803 Seaway Drive__
_____, situated in __Laguna Niguel__ (City),
__Orange__ (County), California, __92677-2775__ (Zip Code), Assessor's Parcel No. __658-301-18__ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. form PLA) for additional terms. Case No. 8:24-bk-10284-SC   APN: 658-301-18

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: __Seven Million Ninety Nine Thousand Nine Hundred__
   _____ Dollars ($ __7,099,900__ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ __4.00__ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) ~~If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's-related-entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.~~
   OR (3) ~~If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.~~
   B. ~~If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.~~
   C. In addition, Seller agrees to pay Broker: _____.
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ __2.00__ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

© 2021, California Association of REALTORS®, Inc.

**RLA REVISED 6/21 (PAGE 1 OF 5)**

Seller's Initials __THC__ / _____
Trustee

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Property Address:    22803 Seaway Dr, Laguna Niguel, CA 92677-2775                          Date: _____

**4.**  **A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____ .
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **(1) LEASED AND NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other _____
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.**  **MULTIPLE LISTING SERVICE:**
**A.** **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B.** **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C.** **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____CRMLS_____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

**6.**  **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A.** **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B.** **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; and **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C.** **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D.** **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

~~Seller's Initials _____ / _____~~        ~~Broker's/Agent's Initials _____ / _____~~

**7.**  **PUBLIC MARKETING OF PROPERTY:**
**A.** **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B.** **PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i)** Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C.** **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
**D.** **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
(1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this
Agreement or ☐ _____ (date) _____

**RLA REVISED 6/21 (PAGE 2 OF 5)**                          Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Property Address: ___22803 Seaway Dr, Laguna Niguel, CA 92677-2775___

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.** **Whether 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8.** **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**A.** **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**B.** **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands that **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

~~9.~~ ~~SELLER REPRESENTATIONS: Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.~~

**10.** **BROKER'S AND SELLER'S DUTIES:**

**A.** **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in 10D as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** **Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

**C.** **Buyer Supplemental Offer Letters (Buyer Letters):**

(1) Paragraph 8 of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) **(A)** Seller instructs Broker not to present Buyer Letters, whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR **(B)** ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.** **Investigations and Reports:** Seller agrees, within **5 (or _____) Days** of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____.
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

~~F.~~ ~~Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~

**RLA REVISED 6/21 (PAGE 3 OF 5)**

Seller's Initials _____ / _____

Property Address: 22803 Seaway Dr, Laguna Niguel, CA 92677-2775

**11. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**12. AGENCY RELATIONSHIPS:**

    **A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

    **B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

    **C. POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

    **D. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

    **E. POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

    **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

    **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

    **A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

    **B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for the use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED.  PEST CONTROL/TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER.

TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY.

RLA REVISED 6/21 (PAGE 4 OF 5)    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    BK / Listing

Property Address: 22803 Seaway Dr, Laguna Niguel, CA 92677-2775

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

~~**22. DISPUTE RESOLUTION:**~~

~~**A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.~~

**B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____.

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller **(i)** represents that the entity for which the individual is signing already exists and **(ii)** shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**   Case No. 8:24-bk-10284-SC   APN: 658-301-18

Seller _____   Date 5/15/25
Thomas H. Casey, Ch 7 Trustee for the Estate of Amy Li Hsiao

Address _____   City _____   State _____ Zip _____
Telephone _____ Fax _____   E-mail _____

Seller _____   Date _____

Address _____   City _____   State _____ Zip _____
Telephone _____ Fax _____   E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) __Berkshire Hathaway HomeServices CA Properties__   DRE Lic. # __01317331__
Address __21 Corporate Plaza, Suite 100__   City __Newport Beach__   State CA Zip __92660__
By _____ Tel. 714.606.5765   E-mail Clarence.Yoshikane@gmail.com   DRE Lic.# __00801398__ Date __May 15, 2025__
Clarence Yoshikane
By _____ Tel. _____   E-mail _____   DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2021 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**RLA REVISED 6/21 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

**ADDENDUM TO**
**EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL**

In reference to the real property known as: **22803 Seaway Dr, Laguna Niguel, CA 92677-2775, County of Orange, APN: 658-301-18**, (the "property").

The undersigned hereby agree to this addendum as follows:

1.      The parties acknowledge that this listing agreement and any agreement relating to the Property are not binding (including the entering into of a purchase agreement) until Bankruptcy Court approval.  The parties acknowledge that the Bankruptcy Court may after approval of this agreement later reduce commissions agreed to.

2.      Broker agrees to extensively market the Property through internet real estate websites and multiple listing services.

3.      The Trustee shall have the right to sell the Property to anyone who, prior to the date of entering into this agreement, has expressed an interest in purchasing the Property, and Broker shall not be entitled to a commission on such a sale.

4.      A commission is not earned until court approval of a purchase agreement is obtained and escrow is closed.

5.      All disputes between Broker and Trustee or regarding sale of the property shall be resolved in the U.S. Bankruptcy Court, Central District of California, Santa Ana Division.

6.      There shall be no claim by broker for damages of any kind against **Thomas H. Casey**, or against the **Law Offices of Thomas H. Casey**.  Any claim for damages by broker as it relates to the listing or sale herein shall only be against the Bankruptcy Estate of **Amy Li Hsiao, Case No. 8:24-bk-10284-SC**.

7.      Broker agrees that any previous listing agreements with regard to this Property are Null & Void.

The within agreement, upon its execution of both parties, is herewith made an integral part of the employment of Broker relating to the Property herein and the aforementioned Agreement of Sale.

*[signature]* THC, Trustee

**DATE:**          5 15 2025

**BROKER:** _____

Clarence Yoshikane, Trustee's Agent
CA DRE # 00801398


714.606.5765, Direct Line
Clarence.Yoshikane@gmail.com



**DATE:** 5/15/25

**BANKRUPTCY TRUSTEE:** _____

Thomas H. Casey,
Chapter 7 Trustee and sole managing member of Amy Li
Hsiao, Case No. 8:24-bk-10284-SC
and not in his individual capacity or
as a member of the Law Offices of
Thomas H. Casey

# EXHIBIT "2"

# CLARENCE YOSHIKANE

23 Corporate Plaza Drive, Suite 100, Newport Beach, CA 92660 · 714.606.5765
Clarence.Yoshikane@gmail.com · DRE No. 00801398 · www.Yoshikane-Toyama.com

---

Clarence's Expansive Network, Unparalleled Client Service, and his Proven Market Strategies have made him an Elite Member of Merrill Lynch, Prudential, Pacific Sotheby's, Coldwell Banker, and Berkshire Hathaway for over 4 Decades.  He has Cultivated Extensive Knowledge of the Bankruptcy, Land, Residential, and Commercial Markets and consistently has been Ranked in the Top 3% in the Nation.

## EXPERIENCE

**JULY 23, 2020 – PRESENT**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
BERKSHIRE HATHAWAY HOMESERVICES CALIFORNIA PROPERTIES
Servicing California (Nationwide & International Network)
Top ½ of 1% of Sales Executives Nationwide

**DECEMBER 6, 2018 – JULY 22, 2020**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
COLDWELL BANKER REAL ESTATE
Servicing California (Nationwide & International Network)

**SEPTEMBER 12, 2016 – DECEMBER 5, 2018**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
PACIFIC SOTHEBY'S INTERNATIONAL REALTY
Servicing California (Nationwide & International Network)

**SEPTEMBER 1, 2013 – SEPTEMBER 11, 2016**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
BERKSHIRE HATHAWAY HOMESERVICES CALIFORNIA PROPERTIES
Servicing California (Nationwide & International Network)

**JANUARY 1, 1989 – AUGUST 31, 2013**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
PRUDENTIAL CALIFORNIA REALTY
Servicing California (Nationwide & International Network)

**JANUARY 1, 1980 – DECEMBER 31, 1989**
**RESIDENTIAL & COMMERICAL REAL ESTATE SALES EXECUTIVE**
MERRILL LYNCH REALTY
Servicing California (Nationwide & International Network)

# SPECIALIZED

**US BANKRUPTCY COURT, STATE COURT RECEIVERSHIP, AND PROBATE & SHORT-SALE SPECIALIST**

**ORANGE, LOS ANGELES, RIVERSIDE, SAN BERNARDINO, AND SAN DIEGO COUNTIES**

**Expert Handling of Occupied, Vacant & Tenant Occupied Properties, Licensed in California since 1980**

**Ranked in the Top 1.5% of the Nation's 1.6 Million Realtors - 2022**

**Consistently Ranked in the Top 1.5% of the Nation's 1.6 Million Realtors; RealTrends**

**Assessed damages, obtained bids for repairs, Listed & Sold –**
**US Bankruptcy Court, State Court Receivership, Probate Court,**
**REO, Bank Owned & Corporate Owned Properties**

**Developed, Owned & Managed – owner & non-owner occupied properties in Orange & Los Angeles Counties**

# PROFESSIONAL ASSOCIATIONS

- Newport Beach Association of Realtors (NBAOR)
- California Regional Multiple Listing Service (CRMLS)
- California Association of Realtors (CAR)
- National Association of Realtors (NAR)

# LICENSE

DRE NO. 00801398

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **APPLICATION OF CHAPTER 7 TRUSTEE TO EMPLOY BERKSHIRE HATHAWAY HOME SERVICES CA PROPERTIES AS REAL ESTATE BROKER AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT; DECLARATION OF CLARENCE YOSHIKANE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 20, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ronald Appel    attorneyrappel@gmail.com
- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Arturo Cisneros    arturo@mclaw.org, CACD_ECF@mclaw.org
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Charles M Farano    cfarano@faranolaw.com, rsteele@faranolaw.com
- Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Andrew Mase    amase@theryanfirm.com, ecf@theryanfirm.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Eric A Mitnick    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- Karen S. Naylor    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- Giovanni Orantes    go@gobklaw.com, cmh@gobklaw.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com,andreac@gobklaw.com,normay@gobklaw.com
- Steven Rader    ecf@theryanfirm.com
- Allan D Sarver    ADS@asarverlaw.com
- Michael R Totaro    Ocbkatty@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **May 20, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Amy Li Hsiao
22803 Seaway Dr
Laguna Niguel, CA 92677

Berkshire Hathaway Home Services CA Properties
23 Corporate Plaza Drive, Suite 100
Newport Beach, CA 92660

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 20, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 20, 2025 | D. Woo | /s/ D. Woo |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                           **F 9013-3.1.PROOF.SERVICE**

1  TIMOTHY J. YOO (State Bar No.155531)
   tjy@lnbyg.com
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, CA 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
5
6  Attorneys for Thomas H. Casey
   Chapter 7 Trustee
7
8              **UNITED STATES BANKRUPTCY COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**
10                  **SANTA ANA DIVISION**
11

| | |
|---|---|
| In re | Case No. 8:24-bk-10284-SC |
| AMY LI HSIAO, | Chapter 7 |
| Debtor. | **NOTICE OF INTENT TO ABANDON ESTATE PROPERTY** |
| | **[11 U.S.C. § 554(a); LBR 6007-1]** |
| | [No Hearing Required] |

**TO ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. § 554(a) and Local Bankruptcy

Rule 6007-1, Thomas H. Casey, the Chapter 7 trustee ("Trustee") for the estate of Amy Li Hsiao

("Debtor"), intends to abandon the estate's interest in the real property located at 22803 Seaway

Drive, Laguna Niguel, California 92677 (the "Property").

The Trustee's broker diligently marketed the Property for sale pursuant to the terms set

forth in this Court's Order Granting Motion for Relief from the Automatic Stay [Doc 324].

Notwithstanding, no offer was received that would result in any equity above the costs of sale

and secured debts against the Property.  As a result, the Property has no value and benefit to the

1

1   estate.  Hence, the Trustee believes that the proposed abandonment is in the best interests of the

2   estate and its creditors.

3        **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 6007-1,

4   any objection or request for hearing must be filed with the Court and served on the Trustee not

5   more than 14 days after service from this Notice.  If no request for hearing is timely filed and

6   served, the Trustee may take the proposed action and the Trustee will be deemed to have

7   abandoned any interest in the Property 14 days from the date of mailing this notice, which date

8   is noted below.  No court order will be required for the abandonment to be effective.

9        If a timely objection and request for hearing is filed and served, the Trustee shall within

10  21 days from the date of service of the response and request for hearing schedule and give not

11  less than 14 days notice of a hearing to those responding and to the United States Trustee.  The

12  proceedings in such matters will be governed by Local Bankruptcy Rule 9013-1(o).

13

14  DATED:  July 15, 2025                    LEVENE, NEALE, BENDER, YOO &
                                             GOLUBCHIK L.L.P.
15
                                             By:/s/ Timothy J. Yoo
16                                              TIMOTHY J. YOO
                                                Attorneys for Thomas H. Casey
17                                              Chapter 7 Trustee

18

19

20

21

22

23

24

25

26

27

28

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled: **Notice Of Intent To Abandon Estate Property** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 15, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ronald Appel    attorneyrappel@gmail.com
- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Arturo Cisneros    arturo@mclaw.org, CACD_ECF@mclaw.org
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Charles M Farano    cfarano@faranolaw.com, rsteele@faranolaw.com
- Philip A Gasteier    pag@lnbyg.com
- Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Andrew Mase    amase@theryanfirm.com, ecf@theryanfirm.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Eric A Mitnick    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- Karen S. Naylor    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- Giovanni Orantes    go@gobklaw.com,
  cmh@gobklaw.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com,andreac@go
  bklaw.com,normay@gobklaw.com
- Carmela Pagay    ctp@lnbyg.com
- Steven Rader    ecf@theryanfirm.com
- Allan D Sarver    ADS@asarverlaw.com
- Michael R Totaro    Ocbkatty@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Timothy J Yoo    tjy@lnbyb.com

**2.  SERVED BY UNITED STATES MAIL**: On **July 15, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒Service list attached

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 15, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service list attached

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2025 | Rebecka Merritt | /s/ Rebecka Merritt |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**

```
Label Matrix for local noticing      Berkshire Hathaway Home Services CA Propert      City National Bank
0973-8                               23 Corporate Plaza Ste 100                       Hemar, Rousso & Heald, LLP
Case 8:24-bk-10284-SC                Newport Beach, CA 92660-7942                     c/o Jennifer Witherell Crastz
Central District of California                                                        15910 Ventura Blvd., 12th Floor
Santa Ana                                                                            Encino, CA 91436-2829
Tue Jul 15 14:36:59 PDT 2025


Coast Realty Solutions, Inc.         Danco, Inc.                                     Eastlake Commercial
The Ryan Firm                        c/o Law Office of Eric Mitnick                  c/o Law Offices of Allan D. Sarver
2603 Main Street Suite 1225          21515 Hawthorne Bl., Ste 940                    16000 Ventura Blvd
Irvine, CA 92614-5038                Torrance, CA 90503-6555                         Suite 1000
                                                                                     Encino, CA 91436-2762


Farano Law Goup APC                  Frank Sang Ho Baik, Jang & Company Accountan    Levene Neale Bender Yoo & Golubchik L.L.P.
4501 E La Palma Ave Ste 240          16700 Valley View Ave #200                      2818 La Cienega Ave
Anaheim, CA 92807-1950               La Mirada, CA 90638-5831                        Los Angeles, CA 90034-2618


Rodeo Realty Inc.                    Totaro & Shanahan                               Santa Ana Division
Rodeo Realty, Inc.                   PO Box 789                                      411 West Fourth Street, Suite 2030,
202 N. Canon Dr                      Pacific Palisades, CA 90272-0789                Santa Ana, CA 92701-4500
Beverly Hills, CA 90210-5325


Ally Bank                            Andrew Mase                                     Chase Card Services
Resurgent Capital Services           2603 Main Street                                Attn: Bankruptcy
PO Box 10368                         1225                                            P.O. 15298
Greenville, SC 29603-0368            Irvine, CA 92614-5038                           Wilmington, DE 19850-5298


City National Bank                   City National Bank                             City National Bank
4550 New Linden Hill Road, Suite 20  555 S Flower St                                 c/o Jennifer Witherell Crastz
Wilmington, DE 19808-2930            Los Angeles, CA 90071-2300                      Hemar, Rousso & Heald, LLP
                                                                                     15910 Ventura Blvd., 12th Floor
                                                                                     Encino, CA 91436-2829


Coast Realty Solutions,              Coast Realty Solutions, Inc.                    County of Orange Treasurer-Tax Collector
c/o The Ryan Firm                    2603 Main Street                                P.O. Box 4515
2603 Main Streetr Suite 1225         1225                                            Santa Ana CA 92702-4515
Irvine, CA 92614-5038                Irvine, CA 92614-5038


Danco Inc a California Corporation   Dapco, Inc.                                     Eastlake Commercial 2007 LLC
Danco, Inc.                          2476 Overland Avew #203                         c/o Shapell Properties Inc
2476 Overland Avenue #203            Los Angeles, CA 90064-3374                      1990 S. Bundy Drive, Suite 500
Los Angeles, CA 90064-3374                                                           Los Angeles, CA. 90025-5245


Eastlake Commerical 2007 LLC         FRANCHISE TAX BOARD                             First American Title Insurance Co
Greenberg, Glusker Fields Claman &   BANKRUPTCY SECTION MS A340                      4795 Regent Blvd., Mail Code 1011-F
2049 Century Park East, Suite 2600   PO BOX 2952                                     Irving, TX 75063-2491
Los Angeles, CA 90067-3200           SACRAMENTO CA 95812-2952


Franchise Tax Board                  Frank Baik                                      Internal Revenue Service
PO Box 942867                        16700 Valley View Ave Ste 200                   PO Box 7346
Sacramento, CA 94267-0001            La Mirada CA 90638-5831                         Philadelphia, PA 19101-7346
```

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Karen Sue Naylor, Chapter 7 Trustee
c/o Nathan F. Smith, counsel for Karen S
2112 Business Center Drive
Irvine, CA 92612-7135

Nekter Juice Bar, Inc.
c/o Rutan & Tucker, LLP
Attn: Roger F. Friedman
18575 Jamboree Road, 9th Floor
Irvine, CA 92612-2559

Ollo Card Services
Attn: Bankruptcy
Po Box 9222
Old Bethpage, NY 11804-9222

Rutan & Tucker LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612-2559

Susan L Hackett
c/o Rodeo Realty Inc
202 N Canon Dr
Beverly Hills, CA 90210-5325

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Wells Fargo Bank N
Po Box 10335
Des Moines, IA 50306-0335

Wells Fargo Bank Small Business Lending Divi
PO Box 29482 MAC S4101-08C
Phoenix, AZ 85038-9482

Wells Fargo Bank, N.A.
Default Document Processing
MAC# N9286-01Y
P.O. Box 1629
Minneapolis MN 55440-1629

West Coast Private Investments, LLC
32035 Isle Vista
Laguna Niguel, CA 92677-5413

Western Fidelity Trustees
1222 Crenshaw Blvd., Suite B
Torrance, CA 90501-2496

Amy Li Hsiao
22803 Seaway Dr
Laguna Niguel, CA 92677-2775

Charles M Farano
Farano Law Group APC
4501 E. La Palma Ave., Ste. 240
Anaheim, CA 92807-1950

Giovanni Orantes
Orantes Law Firm PC
3435 Wilshire Blvd 27th Floor
Los Angeles, CA 90010-1901

Maureen J Shanahan
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272-0789

Michael R Totaro
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272-0789

Susan L Hackett
Rodeo Realty, Inc.
202 N. Canon Dr
Beverly Hills, CA 90210-5325

Thomas H Casey (TR)
26400 La Alameda, Suite 210
Mission Viejo, CA 92691-8578

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)Wells Fargo Bank, N.A.

(u)West Coast Private Investments, LLC

(d)Charles M Farano
The Farano Law Group APC
4501 E La Palma Ave Ste 240
Anaheim, CA 92807-1950

End of Label Matrix
Mailable recipients    48
Bypassed recipients     4
Total                  52

# EXHIBIT 4

# Central District of California
# Claims Register

### 8:24-bk-10284-SC Amy Li Hsiao Converted 01/17/2025

| | |
|---|---|
| **Judge:** Scott C Clarkson | **Chapter:** 7 |
| **Office:** Santa Ana | **Last Date to file claims:** 07/31/2025 |
| **Trustee:** Thomas H Casey (TR) | **Last Date to file (Govt):** 11/10/2025 |

| | | |
|---|---|---|
| *Creditor:* (41858327)<br>Danco Inc a California Corporation<br>Danco, Inc.<br>2476 Overland Avenue #203<br>Los Angeles, CA 90064 | **Claim No: 1**<br>*Original Filed<br>Date:* 02/21/2024<br>*Original Entered<br>Date:* 02/21/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* TS<br>*Modified:* |

Amount claimed: $1424790.03

*History:*

Details   1-1   02/21/2024 Claim #1 filed by Danco Inc a California Corporation, Amount claimed: $1424790.03 (TS)

*Description:* (1-1) Money Loaned, Secured by Real Estate
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (41864833)<br>JPMorgan Chase Bank, N.A.<br>s/b/m/t Chase Bank USA, N.A.<br>c/o National Bankruptcy Services, LLC<br>P.O. Box 9013<br>Addison, Texas 75001 | **Claim No: 2**<br>*Original Filed<br>Date:* 02/27/2024<br>*Original Entered<br>Date:* 02/27/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Gatlyn Lindbergh<br>*Modified:* |

Amount claimed: $11196.74

*History:*

Details   2-1   02/27/2024 Claim #2 filed by JPMorgan Chase Bank, N.A., Amount claimed: $11196.74 (Lindbergh, Gatlyn)

*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (41866360)<br>Wells Fargo Bank Small Business Lending<br>Division<br>PO Box 29482 MAC S4101-08C<br>Phoenix, AZ 85038 | **Claim No: 3**<br>*Original Filed<br>Date:* 02/28/2024<br>*Original Entered<br>Date:* 02/28/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Lacey Bruns<br>*Modified:* |

Amount claimed: $7498.04

*History:*

Details   3-1   02/28/2024 Claim #3 filed by Wells Fargo Bank Small Business Lending Division, Amount claimed: $7498.04 (Bruns, Lacey)

*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (41841724)<br>Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101 | **Claim No: 4**<br>*Original Filed Date:* 03/04/2024<br>*Original Entered Date:* 03/04/2024<br>*Last Amendment Filed:* 11/20/2024<br>*Last Amendment Entered:* 11/20/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Timothy C Schakow<br>*Modified:* |

Amount  claimed: $0.00

Secured claimed: $0.00

Priority   claimed: $0.00

*History:*

| | | | |
|---|---|---|---|
| Details | 4-1 | 03/04/2024 | Claim #4 filed by Internal Revenue Service, Amount claimed: $119635.73 (Schakow, Timothy) |
| Details | 4-2 | 03/19/2024 | Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $77288.85 (Schakow, Timothy) |
| Details | 4-3 | 06/04/2024 | Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $23487.12 (Schakow, Timothy) |
| Details | 4-4 | 11/20/2024 | Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $0.00 (Schakow, Timothy) |

*Description:*

*Remarks:*


| | | |
|---|---|---|
| *Creditor:* (41934541)<br>Wells Fargo Bank, N.A.<br>Default Document Processing<br>MAC# N9286-01Y<br>P.O. Box 1629<br>Minneapolis MN 55440-9790 | **Claim No: 5**<br>*Original Filed Date:* 04/18/2024<br>*Original Entered Date:* 04/18/2024<br>*Last Amendment Filed:* 06/17/2024<br>*Last Amendment Entered:* 06/17/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Wendy A Locke<br>*Modified:* |

Amount  claimed: $394433.97

Secured claimed: $394433.97

*History:*

| | | | |
|---|---|---|---|
| Details | 5-1 | 04/18/2024 | Claim #5 filed by Wells Fargo Bank, N.A., Amount claimed: $394433.97 (Locke, Wendy) |
| Details | 5-2 | 06/17/2024 | Amended Claim #5 filed by Wells Fargo Bank, N.A., Amount claimed: $394433.97 (Locke, Wendy) |

*Description:* (5-1) 3739
(5-2) 3739

*Remarks:*


| | | |
|---|---|---|
| *Creditor:* (41951843)<br>Ally Bank<br>Resurgent Capital Services<br>PO Box 10368<br>Greenville, SC 29603-0368 | **Claim No: 6**<br>*Original Filed Date:* 04/30/2024<br>*Original Entered Date:* 04/30/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Mark Stidham<br>*Modified:* |

Amount  claimed: $919.14

Secured claimed:    $0.00

*History:*

| | | | |
|---|---|---|---|
| Details | 6-1 | 04/30/2024 | Claim #6 filed by Ally Bank, Amount claimed: $919.14 (Stidham, Mark) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (41841728)    History<br>County of Orange Treasurer-Tax Collector<br>P.O. Box 4515<br>Santa Ana CA 92702-4515 | **Claim No: 7**<br>*Original Filed<br>Date:* 05/15/2024<br>*Original Entered<br>Date:* 05/15/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* David Scallon<br>*Modified:* |

Amount  claimed: $143569.42

Secured claimed: $143569.42

Priority   claimed:        $0.00

*History:*

| Details | ⊙ | 7-1 | 05/15/2024 Claim #7 filed by County of Orange Treasurer-Tax Collector, Amount claimed: $143569.42 (Scallon, David) |
|---|---|---|---|

*Description:* (7-1) Property Taxes

*Remarks:* (7-1) BK2400030

| | | |
|---|---|---|
| *Creditor:*    (42002103)<br>Eastlake Commercial 2007 LLC<br>c/o Shapell Properties Inc<br>1990 S. Bundy Drive, Suite 500<br>Los Angeles, CA. 90025 | **Claim No: 8**<br>*Original Filed<br>Date:* 06/05/2024<br>*Original Entered<br>Date:* 06/05/2024<br>*Last Amendment<br>Filed:* 04/25/2025<br>*Last Amendment<br>Entered:* 04/25/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Allan D Sarver<br>*Modified:* |

Amount claimed: $141307.39

*History:*

| Details | ⊙ | 8-1 | 06/05/2024 Claim #8 filed by Eastlake Commercial 2007 LLC, Amount claimed: $572331.25 (Sarver, Allan) |
|---|---|---|---|
| | | 87 | 07/19/2024 Objection to Claim #8 by Claimant Eastlake Commercial 2007 LLC. in the amount of $ $572,331.25 Filed by Creditor Eastlake Commercial. (Attachments: # 1 Exhibit Amy Lihsin Hsiao's Answer to Complaint) (Farano, Charles) |
| | | 124 | 08/09/2024 Motion RE: Objection to Claim Number 8 by Claimant Eastlake Commercial 2007 LLC. Filed by Debtor Amy Li Hsiao (Farano, Charles) |
| Details | ⊙ | 8-2 | 04/25/2025 Amended Claim #8 filed by Eastlake Commercial 2007 LLC, Amount claimed: $141307.39 (Sarver, Allan) |

*Description:* (8-1) Unpaid Rent, CAM/Related charges per lease guarantee
(8-2) Unpaid Rent,CAM/Related Charges. See Attached Order Dkt.235

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (42009368)<br>Coast Realty Solutions, Inc.<br>2603 Main Street<br>1225<br>Irvine, CA 92614 | **Claim No: 9**<br>*Original Filed<br>Date:* 06/12/2024<br>*Original Entered<br>Date:* 06/12/2024 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |

*History:*

| Details | ⊙ | 9-1 | 06/12/2024 Claim #9 filed by Coast Realty Solutions, Inc., Amount claimed: $377460.00 (AUTP) |
|---|---|---|---|
| | | 86 | 07/19/2024 Objection to Claim #9 by Claimant Coast Realty Solutions, Inc.. in the amount of $ $377,460.00 Filed by Interested Party Coast Realty Solutions, Inc.. (Attachments: # 1 Exhibit Defendant Amy Lihsin Hsiao's Answer to Complaint) (Farano, Charles) - See docket entry no.: 91 for corrections Modified on 7/22/2024 (NB8). |
| | | 131 | 08/12/2024 Motion RE: Objection to Claim Number 9 by Claimant Coast Realty Solutions, Inc. Filed by Debtor Amy Li Hsiao (Farano, Charles) |

*Description:*

*Remarks:*

Amount claimed: $377460.00

*History:*

| | | |
|---|---|---|
| Details ⊙ | 9-1 | 06/12/2024 Claim #9 filed by Coast Realty Solutions, Inc., Amount claimed: $377460.00 (AUTP) |
| | 86 | 07/19/2024 Objection to Claim #9 by Claimant Coast Realty Solutions, Inc.. in the amount of $ $377,460.00 Filed by Interested Party Coast Realty Solutions, Inc.. (Attachments: # 1 Exhibit Defendant Amy Lihsin Hsiao's Answer to Complaint) (Farano, Charles) - See docket entry no.: 91 for corrections Modified on 7/22/2024 (NB8). |
| | 131 | 08/12/2024 Motion RE: Objection to Claim Number 9 by Claimant Coast Realty Solutions, Inc. Filed by Debtor Amy Li Hsiao (Farano, Charles) |

*Description:*
*Remarks:*

---

*Creditor:* (42009637)
City National Bank
c/o Jennifer Witherell Crastz
Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

**Claim No: 10**
*Original Filed Date:* 06/12/2024
*Original Entered Date:* 06/12/2024

*Status:*
*Filed by:* CR
*Entered by:* Jennifer Witherell Crastz
*Modified:*

Amount  claimed: $1573283.43
Secured claimed: $1573283.43

*History:*

| | | |
|---|---|---|
| Details ⊙ | 10-1 | 06/12/2024 Claim #10 filed by City National Bank, Amount claimed: $1573283.43 (Crastz, Jennifer) |

*Description:*
*Remarks:*

---

*Creditor:* (41841725)  History
Nekter Juice Bar, Inc.
c/o Rutan & Tucker, LLP
Attn: Roger F. Friedman
18575 Jamboree Road, 9th Floor
Irvine, CA 92612

**Claim No: 11**
*Original Filed Date:* 06/12/2024
*Original Entered Date:* 06/12/2024

*Status:*
*Filed by:* CR
*Entered by:* Roger F Friedman
*Modified:*

Amount  claimed: $102330.98
Secured claimed: $102330.98

*History:*

| | | |
|---|---|---|
| Details ⊙ | 11-1 | 06/12/2024 Claim #11 filed by Nekter Juice Bar, Inc., Amount claimed: $102330.98 (Friedman, Roger) |

*Description:*
*Remarks:*

---

*Creditor:* (42054490)
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**Claim No: 12**
*Original Filed Date:* 07/16/2024
*Original Entered Date:* 07/16/2024
*Last Amendment Filed:* 03/26/2025
*Last Amendment Entered:* 03/26/2025

*Status:*
*Filed by:* CR
*Entered by:* Joshua E Dubins
*Modified:*

*History:*

| | | |
|---|---|---|
| Details ⊙ | 12-1 | 07/16/2024 Claim #12 filed by FRANCHISE TAX BOARD, Amount claimed: $0.00 (Franklin, Anthony) |
| Details ⊙ | 12-2 | 03/26/2025 Amended Claim #12 filed by FRANCHISE TAX BOARD, Amount claimed: $0.00 (Dubins, Joshua) |

*Description:* (12-1) Claim Filed
(12-2) Claim Filed
*Remarks:*

Amount claimed: $0.00
Priority claimed: $0.00

*History:*

| Details | 12-1 | 07/16/2024 Claim #12 filed by FRANCHISE TAX BOARD, Amount claimed: $0.00 (Franklin, Anthony) |
| Details | 12-2 | 03/26/2025 Amended Claim #12 filed by FRANCHISE TAX BOARD, Amount claimed: $0.00 (Dubins, Joshua) |

*Description:* (12-1) Claim Filed
(12-2) Claim Filed
*Remarks:*

| *Creditor:* (42337054) | **Claim No: 13** | *Status:* |
| Susan L Hackett | *Original Filed* | *Filed by:* CR |
| c/o Rodeo Realty Inc | *Date:* 02/13/2025 | *Entered by:* TS |
| 202 N Canon Dr | *Original Entered* | *Modified:* |
| Beverly Hills, CA 90210 | *Date:* 02/13/2025 | |

Amount claimed: $171250.00

*History:*

| Details | 13-1 | 02/13/2025 Claim #13 filed by Susan L Hackett, Amount claimed: $171250.00 (TS) |

*Description:* (13-1) Earned Commissions based on Debtor's Brach of Contract
*Remarks:*

| *Creditor:* (42368880) | **Claim No: 14** | *Status:* |
| Karen Sue Naylor, Chapter 7 Trustee | *Original Filed* | *Filed by:* CR |
| c/o Nathan F. Smith, counsel for Karen S | *Date:* 03/07/2025 | *Entered by:* Nathan F Smith |
| 2112 Business Center Drive | *Original Entered* | *Modified:* |
| Irvine, CA 92612 | *Date:* 03/07/2025 | |

Amount claimed: $626423.91

*History:*

| Details | 14-1 | 03/07/2025 Claim #14 filed by Karen Sue Naylor, Chapter 7 Trustee, Amount claimed: $626423.91 (Smith, Nathan) |

*Description:*
*Remarks:*

| *Creditor:* (42447446) | **Claim No: 15** | *Status:* |
| Frank Baik | *Original Filed* | *Filed by:* CR |
| 16700 Valley View Ave Ste 200 | *Date:* 04/28/2025 | *Entered by:* VN |
| La Mirada CA 90638 | *Original Entered* | *Modified:* |
| | *Date:* 04/28/2025 | |

Amount claimed: $3090.00

*History:*

| Details | 15-1 | 04/28/2025 Claim #15 filed by Frank Baik, Amount claimed: $3090.00 (VN) |

*Description:* (15-1) Income Tax Preparations
*Remarks:* (15-1) #9479

| | | |
|---|---|---|
| *Creditor:*    (41841730) | **Claim No: 16** | *Status:* |
| West Coast Private Investments, LLC | *Original Filed* | *Filed by:* CR |
| 32035 Isle Vista | *Date:* 05/28/2025 | *Entered by:* AUTP |
| Laguna Niguel, CA 92677 | *Original Entered* | *Modified:* |
| | *Date:* 05/28/2025 | |

Amount  claimed: $1679319.46

Secured claimed: $1679319.46

*History:*

Details    🌐    16-1    05/28/2025 Claim #16 filed by West Coast Private Investments, LLC, Amount claimed: $1679319.46 (AUTP)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (42600977) | **Claim No: 17** | *Status:* |
| The Orantes Law Firm, P.C | *Original Filed* | *Filed by:* CR |
| **(ADMINISTRATIVE)** | *Date:* 07/31/2025 | *Entered by:* Giovanni Orantes |
| 3435 Wilshire Blvd., 27th Floor | *Original Entered* | *Modified:* |
| Los Angeles, CA 90010 | *Date:* 07/31/2025 | |

Admin claimed: $70305.94

*History:*

Details    🌐    17-1    07/31/2025 Claim #17 filed by The Orantes Law Firm, P.C, Admin claimed: $70305.94 (Orantes, Giovanni)

*Description:* (17-1) Administrative claim for attorneys' fees and costs

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*    (42688669) | **Claim No: 18** | *Status:* |
| Office of the U.S. Trustee | *Original Filed* | *Filed by:* CR |
| 915 Wilshire Blvd Suite 1850 | *Date:* 09/26/2025 | *Entered by:* AUTP |
| Los Angeles, CA 90017 | *Original Entered* | *Modified:* |
| | *Date:* 09/26/2025 | |

Amount claimed: $500.00

Priority  claimed: $500.00

*History:*

Details    🌐    18-1    09/26/2025 Claim #18 filed by Office of the U.S. Trustee, Amount claimed: $500.00 (AUTP)

*Description:*

*Remarks:* (18-1) Account Number (last 4 digits):9479

# Claims Register Summary

**Case Name:** Amy Li Hsiao
**Case Number:** 8:24-bk-10284-SC
**Chapter:** 7
**Date Filed:** 02/05/2024
**Total Number Of Claims:** 18

| | |
|---|---|
| **Total Amount Claimed*** | $6657372.51 |
| **Total Amount Allowed*** | |

includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

|  | Claimed | Allowed |
|---|---|---|
| **Secured** | $3892937.26 |  |
| **Priority** | $500.00 |  |
| **Administrative** | $70305.94 |  |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/22/2025 14:51:33 | | |
| **PACER Login:** | kenichiito | **Client Code:** | |
| **Description:** | Claims Register | **Search Criteria:** | 8:24-bk-10284-SC Filed or Entered From: 10/2/2023 Filed or Entered To: 12/31/2025 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
15910 Ventura Blvd., 12th Floor, Encino, CA 91436

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __10/22/2025__ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

[X] Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __10/22/2025__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

[X] Service information continued on attached page

**3. SERVED BY ~~PERSONAL DELIVERY~~, OVERNIGHT MAIL, ~~FACSIMILE TRANSMISSION OR EMAIL~~** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __10/22/2025__ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE'S COPY**
Chambers of Hon. Scott Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

[X] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/22/2025 | MARY ANN GRANZOW | /s/ *MaryAnn Granzow* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

**SERVED BY COURT VIA NEF:**

- Ronald Appel     attorneyrappel@gmail.com
- Thomas H Casey (TR)     msilva@tomcaseylaw.com, thc@trustesolutions.net
- Arturo Cisneros     arturo@mclaw.org, CACD_ECF@mclaw.org
- Jennifer Witherell Crastz     jcrastz@hrhlaw.com
- Charles M Farano     cfarano@faranolaw.com, rsteele@faranolaw.com
- Philip A Gasteier     pag@lnbyg.com
- Wendy A Locke     ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Andrew Mase     ecf@theryanfirm.com, ecf@theryanfirm.com
- Kenneth Misken     Kenneth.M.Misken@usdoj.gov
- Eric A Mitnick     MitnickLaw@gmail.com, mitnicklaw@gmail.com
- Karen S. Naylor     Becky@ringstadlaw.com,
  Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- Giovanni Orantes     go@gobklaw.com,
  cmh@gobklaw.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com,andre
  ac@gobklaw.com,normay@gobklaw.com
- Carmela Pagay     ctp@lnbyg.com
- Steven Rader     ecf@theryanfirm.com
- Allan D Sarver     ADS@asarverlaw.com
- Nathan F Smith     nathan@mclaw.org,
  CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org
- Michael R Totaro     Ocbkatty@aol.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Timothy J Yoo     TJY@LNBYG.COM

**SERVED BY U.S. MAIL:**

**Debtor**
Amy Li Hsiao
aka Amy L Hsiao
aka Amy Hsiao
aka Amy Lihsin Hsiao
22803 Seaway Drive
Laguna Niguel, CA 92677

**Debtor's Attorney**
Charles M Farano
Farano Law Group APC
4501 E. La Palma Ave., Ste. 240
Anaheim, CA 92807

Giovanni Orantes
Orantes Law Firm PC
3435 Wilshire Blvd., 27th Floor
Los Angeles, CA 9001

**Chapter 7 Trustee**
Thomas H Casey (TR)
26400 La Alameda, Suite 210
Mission Viejo, CA 92691

**Attorneys for Chapter 7 Trustee**
Philip A. Gasteier
Timothy J. Yoo
Carmela Pagay
Levene, Neale, Bender, Yoo &Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034

**U.S. Trustee**
Kenneth Misken
DOJ-UST
Office of the United States Trustee
411 W. Fourth Street, Suite 7160
Santa Ana, CA 92701


**BY OVERNIGHT DELIVERY:**
Judge's Copy:
Hon. Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593